thank you, Your Honor. All right. Our next case for this morning is Bazile against Finance System of Green Bay number 191298. Mr Stern, are you here? I am, Your Honor. You may proceed. May it please the court. This case involves the harm caused by defendant's election letter, which denied plaintiff's opportunity to manage her debts based on clear and accurate information about the character and the amount of the debt. Furthermore, defendant could still seek interest in fees that accumulated after the letter was sent, or could sell that remaining balance to a third party. I want to address first, there was a defendant's that the FDCPA does not require any disclosure. Counsel? Yes, Your Honor. Before we address the merits, we do need to think about standing to sue. And as you know, the district judge said that this was the very same standing issue that was involved in Larkin, and that Larkin is now under advisement before a different panel of this court. I want to ask you if you could articulate as clearly as you can what injury your clients suffered. They suffered that they were unable to make a decision as to the management of their debts based upon accurate information regarding the amount of the debts. What decision? A decision as to whether to pay how much to pay which debts to pay the court in voucher recognize, and I can quote from it is because these consumers must often make difficult decisions about how to use scarce financial resources. In that case involved asserting late charges that could not accrue. The court acknowledged that that could influence those decisions, but the court found that that the that information and I was impairing the ability of consumers to make those decisions as to how to use their scarce financial resources. So you might accidentally pay a low credit, a low interest rate card first instead of a high interest rate card, something like that. That could be one way it could be to if they know they're certainly aware of there's different theories of how to manage debt. One way is exactly as your honor said, there's another method where in order to do it, you pay off the small balances first, so you start feeling good about paying them off, even though they might be at lower interest rates rather than paying higher interest rates first. The combination of that decision making process is deprived when you're told you're not told that interest is accruing on on the debt. And that lack of information is is what's what's at the heart here. Let me be in very good counsel. I'm, I'm not sure I understand it. If the plaintiffs claim is that they didn't think any interest was accruing on this debt, then presumably it's the one they paid first. And their injury is that some other debt with a higher interest rate was left outstanding and interest therefore running. Are they making an argument of that kind? I'm not sure if I hope I didn't misunderstood your honor's question, because I think that it would be the logic would be the other way around that you would pay that you would pay the high interest rate first. And so is is that are they are they saying, we paid other debts first thinking they were higher interest rates. And the injury was that we were we really would have paid this one first. The, the, the argument is that the position is that that is the decision making matrix, the logical matrix, but look, I'm I'm asking, but are you asking whether, Mr. Stern, I'm, I'm asking for some concrete injury, and I certainly can understand the argument. We paid debt a thinking that that was the best debt to pay. But because of lack of information that was wrong, we should have paid debt B. And our injury is the difference in the interest rates running on these debts. Is there any concrete claim of that sort? I didn't see it in the briefs. No, it's that that is, that's correct. There are claim by your clients that they paid any debt whatsoever. That has not been asserted in the complaint. This is a 12B6 review. That's not been asserted that they paid any debt in lieu of paying this debt. But we would go further. And is this the client who filed for bankruptcy? I can't remember. Yeah. Yeah. Okay. So the bankruptcy intervenes anyway. In terms of actual debt payment. And, and certainly the, you know, the prevention of reducing the number of bankruptcies is one of the policy concerns under the FDCPA. Well, part of the question is how much do you have to plead in your complaint to assure the court that Article 3 injury in fact exists and how much can be elaborated later on? You certainly asserted the informational injury and then we have the Spokio issue. You know, is there some concrete injury in fact behind that or is it more like Casillas where it wouldn't have made any difference if somebody had told her about the interest because she wasn't going to do anything with that information anyhow? Well, I mean, but I think that it's more like, um, lively, uh, which is, you know, the more recent decision where it was the deprivation of the information, you know, well, information that would have made a difference. That's what Casillas insists on, not just information out there, you know, like you might be interested in reading, you know, the weather report for San Francisco or something. It's information that matters. With respect to Casillas and Casillas, but Casillas was also a procedural violation. So it was, was whether the failure to follow the procedure, um, impacted a harm that the Congress was attempting to remove. Okay. And so I think we get into this, this problematic area of, or I'll show you the area that, that Spokia spends most time on, which is the discussion about procedural violations. Right. But before you run out of time, by the way, I mean, you're, you're way down. I might need to give you some more. I, I need you to answer me the question why they didn't do exactly what Miller calls for. State the total amount due, interest in other charges as well as principal on the date the Dunning letter was sent. That's, that's what was done here. The inclusion of the safe harbor language was not done, but it's been said over and over again that that isn't mandatory. It's not there in the statute. It's maybe if you just want to have a belt and suspenders, maybe you put that in, but it doesn't mean that letters without it are defective. So, so why isn't that even if we do get overstanding and reach the merits, why isn't that a complete answer? Two things. First is that this letter did not state the full amount of the debt. Well, why, why not? It's just on, on the date the letter was sent. So what we have is this little box up in the corner date, nine, 10, 2017 total balance, $92 and 23 cents. I don't see anything in this to suggest that that was the wrong number as of that date. And if it was the right number as of that date, whatever was principal, whatever was interest, nevermind. Why isn't that all Miller asks for? Well, okay. But I want, I can, I want to address that, but I want to make clear first is Miller dealt with where they only stated the principal. We, we made the allegation that they failed to comply with the requirement and, and specifically cited Miller. It's our position that not 92 23 is the principal, but they did not reflect the interest that already had accrued in that, in that amount. So that's number one. So whether they even complied with, with, with Miller, that, that component of Miller, I think a fair reading of the, of the complaint under the 12 to six standard says they did not, but let's go further to now your question. All the cases that have dealt with this have talked about, and even Miller talks about that in order to satisfy the requirement for stating the amount due both under G and the E claims is that it has to be clearly and accurately stated. And that to do so requires disclosing the dynamic nature of the debt that it can increase from interest. And the cases cited by the, by the, you know, by the defendant and even where they did not use the Miller safe Harbor, they never last cited it. Taylor was one of the cases Barnes and, and Williams versus OSI three cases from this court where the clarity standard was met because they disclosed the dynamic nature of the debt. And that's always been the situation. There is no, there are no cases that hold other than the district court here that hold that it, where the, where the debt is increasing, that the, the debt collector can just state the balance and not make any disclosure, whether it's the Miller safe Harbor or some other clear disclosure after the dynamic nature of the debt, it would be like saying is, you know, pay me $50 and then you pay the $50 and then the response is, well, now you know, owe me another, you know, 49 cents in interest. Well, why didn't you tell me that when you, when you said pay me $50? And that's exactly what's going on here. They're saying is pay me this amount, but that's not the amount that clears the debt. And that was the concern that the second circuit had when it followed this court's decision in Miller or applied this sort of safe Harbor and Miller. Okay. I think we're going to have to wrap up. Okay. All right. Thank you very much. Thank you. We'll turn to Ms. Klander. Thank you, your Honor. May it please the court, Jessica Klander on behalf of finance system of green Bay. I want to begin by just stating that going back to the complaint here and the appellant in this case is now raising arguments and making statements that are completely outside the bounds of the complaint. The complaint says nothing about whether or not interest was in fact accruing. There is no allegation that interest was accruing. There was no allegation that this is only the principle and that there is some other allegation about interest. In fact, all the other allegations that the plaintiff made in this case are completely outside the bounds of the complaint. So I just want to make this point in your brief and obviously it's just 12 B six, which is, which is a notice standard. I take it that Wisconsin law does permit the imposition of this 5% interest rate for this type of debt. So wouldn't it be a fair reading, a certain amount of money that interest can be added? I mean, you, your brief does the opposite. Your brief States very flatly. We weren't ever going to apply any interest charge on this debt. And it seemed to me that sounded more like a summary judgment sort of argument than a 12 B six one. Your Honor. I mean, I think under either way we look at it, the reality is what is pled here. And even if the state allows interest to accrue, if it's permissible under state law, there are a myriad of reasons why interest may not accrue on a debt. It can be because the creditor disallows it because the collection agency for their own policies does not assess an interest. There are a lot of reasons that may not assess interest and to state that it's completely bizarre to me. I mean, you know, maybe somebody does run their business that way, but you know, this is a little medical practice and you know, the letter shows four separate five separate charges, excuse me. And you know, I don't know why we should read a complaint with the somewhat counterintuitive notion that debtors of the medical practice can sit around for months, if not years, and wind up still paying just what the principal do and have a free loan, so to speak, from the organization. Well, I think, Your Honor, I think that therein lies the core issue here, which is that the unsophisticated consumer does presume to understand and has a rudimentary understanding of the law of finances and understands that interest may be assessed on a debt if it fails to pay the debt. That is within the common knowledge of an unsophisticated consumer. I don't disagree with you about that, actually, but there's a big difference between a 5% interest rate or a treasury interest rate or, you know, a lot of credit cards and 18% or a 21% interest rate. So looking, if this number, $92.23, represents just the principal and there is interest lurking around there, the unsophisticated consumer isn't going to know which rate applies. They may generically assume interest, but why isn't this material and potentially, you know, damaging information if you don't know it? Well, a couple of things. One, there is no allegation in the complaint that this is only the total amount due. And so that really isn't an issue. Well, they don't know. I mean, why do you have to plead that, which is something that would be in the knowledge of the defendant? I think that the only thing that would have to be pled is that it doesn't represent the total amount due. And that's not pled. There's nothing as to the balance that is pled. What is pled is that it doesn't disclose the amount may increase. It doesn't even plead that the amount is increasing or will increase. It just says that that needs to be in there, irrespective of whether or not it actually is. So it puts the collection agency in a very difficult position. So they disclose that it may increase when, in fact, it's not going to. It's much safer and more accurate to convey concrete information, which is that the debt is what the debt is on the date that it is sent. And that is the most accurate and complete way to disclose the amount of the debt to the consumer, which is what was done here. And it's consistent with the court's prior cases in the Seventh Circuit. Well, it's hard to buy your argument that it's impossible. I'm not saying anybody has to put the Miller language in. But at a minimum, if the disclosure that interest, late charges, and other charges, the amount due on the day you pay may be greater, you don't have to put a dollar amount. I mean, anybody who's ever paid off a car loan would know this. If you pay it within a certain number of days, it's this amount of money. But if you don't pay within those days, it's going to be some other amount of money. It's a moving target, but that's just the nature of interest accruing. I mean, I'm worried about this as a pleading thing. We have the standing discussion. That's a different thing. Can we show that there is injury in fact to Ms. Bazile from not getting this information? That we've discussed. But your assumption is that because you put $92.23 down, that was the amount you were going to take in full satisfaction of the debt. And it seems to me that's not clear in the record. And I don't think you, as a representative of a collection group, would want any kind of waiver theory that if you don't alert people that interest might be added on too, that you've waived the right to collect it and you have to take just the stated amount in satisfaction. No, and I don't think that that's necessary. I think that what happened in this case, you don't have a record of because it's a 12B6. But I think under the law, whether or not something may inevitably happen in the future is not the requirement that must be followed by a collection agency. And the Seventh Circuit has acknowledged that you are not required to foreshadow what may or may not happen someday in the future. You must only state what is true and accurate on the date that the letter is sent. And that is what was done here. And there's no allegation that that's not true. And by making the collection agency provide disclosures that don't really convey concrete information, or that is specific to the particular debt, has the potential to create much more confusion than simply stating the amount that is due on the date the letter is sent. And so in this case, we have no allegation outside that, that there is anything that is incorrect about that. And that's the crucial aspect of this case, is that what about the letter was inaccurate, false, or misleading. And there is no allegation of that. It simply says that the disclosure that there's no allegation was even required or needed, wasn't there. And there's, you know, in the same way that this is, fails under the case law because of that, it also fails on standings, because there is absolutely no allegation of harm here. The arguments by counsel are not included in the complaint at all. There is no allegation that she would have done anything differently if that information would have been in there, or that there was any inkling that it would have impacted or created any injury at all. So let me just say, I think it's interesting, because there are a lot of pressures in the law, whether it's under Twombly and Iqbal, whether it's under Casillas, there are a lot of pressures in this law, in the law now to expand on complaints. And I'm tempted to say bloat them, but maybe expand will do. Where you've got to, you know, have a long section describing all of the adverse things that are going to happen to somebody as a result of the legal violation they're suing about before standing is all right. And there's always been a concern that, A, standing is not the same thing as a determination on the merits. B, at the complaint stage, it's really more about the allegations. There are allegations, fairly read, that the number on the letter didn't really represent the full amount she had to pay, that it was just the principle. Now, I know some of those words weren't used, but how generously one reads the complaint really gets into some of these bigger policy issues. And I think what you're actually arguing for is very long and wordy complaints. Could I ask that in a somewhat different way? Was there a Rule 12b1 motion to dismiss the complaint? That is, one could imagine that injury would be pleaded very generally in the sense of, I didn't get information. And then it would be the defendant's burden under Rule 12b1 to say, the information you didn't get didn't matter. Was any such motion filed? There was a 12b1 motion. No, a 12b6 motion was filed in response to the complaint stating that there was... Well, you argued lack of standing, and the way to do that is Rule 12b1, not Rule 12b6. Oh, I'm sorry, Your Honor. Yes, Your Honor. I thought you did file a 12b1. I'm looking at the briefs. We did. I apologize. Yes, we filed a motion to dismiss based on lack of standing, and the district court found standing based on a lack of informational injury or something. Did you, in this motion, make an argument that any information that the plaintiffs didn't get from the Dunning letter was immaterial, didn't matter to any decision, or were you simply using the 12b1 motion as a means to attack the complaint as written? The argument that was made in our lack of jurisdiction argument is that nothing that was omitted impacted her decision or response to the debt. That was the core of the argument. There was no allegation. How would one tell, right? The potential injury articulated by Mr. Stern is that if you don't know about interest, you might end up paying the wrong debt by mistake. Was there any argument about that in a Rule 12b1 motion? We didn't argue... That's the first I've heard that argument from counsel, but I would surmise that it doesn't really make sense in this particular case, because if she believed... I guess it's hard to even get in the mind, but if she believed that there was interest accruing but there was no disclosure, she would have paid, she would have contacted the collection agency. I mean, we have Aker from the Seventh Circuit saying that part of what we have here is the FDCPA already provides safeguards for the consumer in the statutory rights and protections included so that they can call if they think that they dispute the validity or the amount of the debt. Okay. I gather from your answer that the answer, to be brief, is no. You didn't ask the district judge to hold a Rule 12b1 hearing at which he would decide whether the lack of information mattered to an actual decision. No. I mean, we've moved for lack of jurisdiction under 12b1 based on the allegation that there was no impact on her response to the debt. But it wasn't a separate hearing. It was part of the motion to dismiss hearing. Okay. I think we actually are out of time for you, Ms. Klander, although we'll be on the same topic in the next argument, too, and also with Mr. Stern. So I will thank you for your presentation. And, Mr. Stern, you had run out of time, but I think I'm just going to call time on this, and we will move on to case number six, which is. Thank you.